UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Willie Lewis Ryan,**

       **Plaintiff,**         **Civil Action No. 11-11217**

   **vs.**                  **District Judge Sean F. Cox**

**Commissioner of Social**        **Magistrate Judge Mona K. Majzoub**
**Security,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Willie Lewis Ryan has filed this civil action seeking judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security disability benefits. (Dkt. 1.) See 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c). Before the Court are the parties' motions for summary judgment. (Dkt. 9, 12.)

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 2.) The Court has reviewed the pleadings, dispenses with oral argument, and is issues this report and recommendation.[1]

**I.    Recommendation**

Because the Court recommends finding that the ALJ properly addressed Plaintiff's treating source's opinion and substantial evidence existed to support the ALJ's conclusions regarding that opinion, the Court recommends denying Plaintiff's motion for summary judgment, granting

---

[1]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Defendant's motion for summary judgment, and dismissing the case.

## II. Report

### A. Facts[2]

#### 1. Procedural facts

On January 11, 2005 Plaintiff applied for Title II disability and disability insurance benefits, alleging disability on May 21, 2004. (AR at 12.) On May 26, 2005 his claim was initially denied. (*Id.*) Plaintiff requested review of the decision and an ALJ held a hearing on June 26, 2006. (*Id.*) Plaintiff requested review from the Appeals Council, which remanded the case for further proceedings. (*Id.*) On August 8, 2008 an ALJ issued a second unfavorable decision. (*Id.*) Plaintiff again sought review by the Appeals Council. (*Id.*) On December 30, 2008 the Appeals Council again remanded and instructed that an ALJ consider Plaintiff's alleged back pain, inability to stand for very long and the office notes from Dr. Jeffrey R. Levin from August 15, 2006. (*Id.*) After that remand, ALJ Henry Perez, Jr., held another hearing on July 21, 2009. (*Id.*)

On November 24, 2009 the ALJ then issued his decision denying Plaintiff his benefits request. (AR at 9.) Plaintiff, for a third time, requested relief from the Appeals Council. On January 19, 2011 the Appeals Council denied Plaintiff's request. (*Id*. at 2.) Plaintiff sought judicial review by filing this case. (Dkt. 1.)

#### 2. The ALJ's denial and discussion of Dr. Levin's opinion

The ALJ determined that Plaintiff had the following severe impairments: bilateral shoulder tendonitis; chronic neck and low back pain; cervical radiculopathy; lumbar radiculopathy, and

---

[2]As Defendant points out, Plaintiff solely argues that the ALJ failed to properly address Dr. Levin's opinion that Plaintiff could not sit/stand/walk for a normal work day. The Court therefore focuses on that argument and presents only those facts related to it.

bilateral carpal tunnel syndrome with numbness and pain. (AR at 14.) The ALJ then stated that he found that the impairments caused "more than minimal limitations in [Plaintiff's] ability to perform basic work activities." (*Id*. at 15.) But the ALJ ultimately held that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

The ALJ concluded that Plaintiff had the residual functional capacity "to perform light work lifting five pounds occasionally that involves occasional climbing of ladders and scaffolds, no overhead reaching with the upper extremities, occasional gross manipulation and forceful grasping and avoids even moderate exposure to heights/machinery and vibration tools, and is unskilled in nature." (AR at 15.)

The ALJ reviewed Plaintiff's testimony at three hearings and then stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they conflicted with the crafted RFC. (AR at 17.)

The ALJ discussed Dr. Levin's opinions at various points throughout his decision. (AR at 18.) The ALJ noted Dr. Levin's March 7, 2005 opinion that Plaintiff had carpal tunnel syndrom, C6-7 radiculopathy, and L5-S1 radiculopathy left greater than right. (*Id.*)

The ALJ noted that, despite Dr. Levin's finding, Plaintiff "continued to receive sporadic and conservative outpatient treatment, which cast[] some doubt as to the degree of pain, numbness and limitations in sitting, standing, walking and lifting he experienced[.]" (AR at 18.)

The ALJ then pointed out a May 9, 2005 physiological consultative exam on which Plaintiff "merely reported occasional use of Vicodin for pain, and although physical exam demonstrated marked limitation of motion on both shoulder joints, it was documented that he was ambulatory without the use of a walking aid, [and] the motor exam revealed fairly good muscle tone, there was

3

no evidence of flaccidity, spasticity or paralysis[.]" (*Id.*)

The ALJ discussed Dr. Levin's September 9, 2005 opinion that Plaintiff should not return to work. (AR at 18.) The ALJ then pointed out that Dr. Levin changed his opinion and filled out a medical statement form several months later. (*Id*. at 19.) The ALJ noted that Dr. Levin stated that Plaintiff could work. (*Id.*) The ALJ then noted that, on March 22, 2006, Dr. Levin opined that Plaintiff was limited to standing/walking for two hours in an eight hour workday and sitting continuously about six hours in an eight-hour workday and that Plaintiff's limitations would disrupt a regular job schedule with low physical demands for half of the working hours in a month. (*Id.*)

The ALJ pointed out that Plaintiff sought infrequent treatment, noting May and August, 2006 and February, 2007 records. (AR at 19.) The ALJ stated that records from September and October 2007 show no significant abnormalities that "would preclude the performance of the type of work outlined [in the RFC.]" (*Id.*) The ALJ also stated that there was no evidence of ongoing medical treatment after that October 2007 record. (*Id.*)

The ALJ stated:

[D]espite [Plaintiff's] testimony of back and neck pain that limited his ability to sit, stand, walk and turn his neck, the treatment records do not document any significant neurological deficits with respect to motor, reflect, or sensory functioning, and the clinical observations do not document ongoing decreased range of motion, paravertebral muscles spasms, or muscle atrophy, typically associated with severe back pain, nor any ongoing treatment with a specialist for pain, nor does it reveal that [Plaintiff] is in need of any medically required hand-held assistive device for walking or standing, brace or TENS unit for the relief of pain. This evidence suggests [Plaintiff's] allegedly disabling back and neck pain has been well controlled with conservative measures. Nevertheless, affording [Plaintiff] the benefit of every doubt, the extent to which his allegation of back and neck pain and limited ability to turn his neck, sit, stand and walk is credible has been reasonably accounted for in the residual functional capacity established above.

(AR at 19.)

The ALJ also pointed out that "although [Plaintiff] has described daily activities that are fairly limited, three factors weigh against considering these allegations to be strong evidence in favor of finding [Plaintiff] disabled." (AR at 20.) The ALJ stated that the daily activities limitations could not be objectively verified with any reasonable degree of certainty. (*Id.*) The ALJ also stated that Plaintiff had such conservative treatment and that that did not comport with Plaintiff's alleged limitations. (*Id.*) And then the ALJ pointed out that Plaintiff lived alone, and aside from stating that he needed help doing yard work, the ALJ noted that Plaintiff needed no other assistance in activities of daily living. (*Id.*) For the ALJ explained that Plaintiff testified that he could mow the law, prepare quick meals, do housework, drive, shop for groceries, visit with others, and take care of his own personal needs. (*Id.*)

The ALJ also explained how Plaintiff's work history did not support Plaintiff's allegations of disability. (AR at 20.) The ALJ pointed out that Plaintiff earned various amounts from his former employer in 2005, 2006, 2007, and 2008–which raised "questions as to whether the continuing unemployment [wa]s actually due to [Plaintiff's] medical impairments." (*Id.* at 20-21.) The ALJ stated that, while Plaintiff's work activity fell below the earnings guidelines, the work indicated that Plaintiff's "daily activities have, at least at times, been somewhat greater than [Plaintiff] has generally reported." (*Id.* at 21.)

The ALJ then discussed Dr. Levin's September 2005 opinion that Plaintiff "should not return to work[.]" (AR at 21.) The ALJ stated that the conclusion was "inconsistent with [Plaintiff's] conservative treatment, the clinical findings upon consultative exam five days later and the longstanding restrictions previously recommended by Dr. Sictczysnski." (*Id.*) The ALJ then noted

5

that "within six months of concluding that [Plaintiff] should not return to work, Dr. Levin opined [that Plaintiff] was capable of work[.]" (*Id.*) The ALJ then explained that Dr. Levin's conclusions regarding Plaintiff's ability to sit, walk or stand was inconsistent with Plaintiff's treatment history and the medical signs and findings. (*Id.*) The ALJ stated that he would therefore afford Dr. Levin's opinion minimal, if any, weight. (*Id.*)

The ALJ explained that, while the state agency consultant was a non-examining physician and therefore his opinion would not "as a general matter deserve as much weight as those of examining or treating physicians, his opinion does deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." (AR at 21.)

The ALJ then discussed Plaintiff's RFC and the vocational expert testimony and held that there were jobs in the economy that Plaintiff could perform. The ALJ then directed a finding of "not disabled." (AR at 23.)

### 3. Record evidence relating to the ALJ's discussion of Dr. Levin's opinion

A May 9, 2005 Sierra Medical Group, PLC report showed that Plaintiff was a "well-developed, well-nourished male who is ambulatory and does not appear to be any acute distress." (AR at 137.) The report did not show any issues with sitting or walking and only addressed Plaintiff's shoulder ailments. (*Id.*)

On March 7, 2005 Plaintiff saw Dr. Levin. (AR at 175.) The report shows that Plaintiff complained of "intermittent low back pain with radicular symptoms in the L5 distribution bilaterally left greater than right." (*Id.*) Dr. Levin also noted that Plaintiff had pain with staghead leg raising bilaterally left greater than right and that Plaintiff had "weakness of both dorsiflexion and plantar flexion in the left foot, weakness of dorsiflexion in the right foot." (*Id.*) Dr. Levin also noted that

6

Plaintiff had a "mildly antalgic" gain. (*Id.*)

A PRFC performed on May 23, 2005 shows that Plaintiff could stand and/or walk for six hours in an eight hour work day and could sit for six hours in an eight hour work day. (AR at 142.) That PRFC also shows that Plaintiff could perform "all orthopedic maneuvers and transfer activities . . . except for overhead reaching with both shoulders. Grooss [sic] and fine dexterity is intact[.]" (*Id*. at 142.) As to postural limitations, the PRFC showed that Plaintiff could climb ramps and stairs and balance frequently and could occasionally: climb ladders/ropes/scaffolds; stoop; kneel; crouch; and crawl. (*Id*. at 143.)

On September 9, 2005 Dr. Levin wrote a report regarding Plaintiff. (AR at 173.) Dr. Levin reviewed an EMG, which he stated showed that Plaintiff had cervical and lumbar radiculopathy and carpal tunnel syndrome. (*Id.*) Dr. Levin further stated that an MRI of the cervical spine showed a disc bulge at C4-5 with neural forminal stenosis and that an MRI of the lumbar spine showed facet disease at L3-4 through L5-S1 and an angular tear and disc bulging at L4-5. (*Id.*) And Dr. Levin noted that there was stenosis at L4-5, as well. (*Id.*) Dr. Levin noted that he did not review imaging, but that the impressions were from a CMI imaging center. (*Id.*) Dr. Levin reasoned that, since Plaintiff had carpal tunnel syndrome and problems with his neck and back, Plaintiff should not return to work. (*Id.*) And Dr. Levin suggested that Plaintiff continue with physical therapy. (*Id.*)

On March 22, 2006 Dr. Levin filled out a Medical Source Statement. (AR at 149.) On this statement, Dr. Levin diagnosed Plaintiff with carpal tunnel and lumbar and cervical radiculopathy. (*Id.*) Dr. Levin indicated that Plaintiff could stand/walk for a total of two hours in an eight hour work day and sit continuously for about six hours in an eight hour work day. (*Id.*) Dr. Levin opined that Plaintiff's limitations had existed since March 7, 2005. (*Id.*) Dr. Levin also opined that

7

Plaintiff's limitations would disrupt him for eighty hours in a month, in a job with low physical demands. (*Id.*)

Records from 2007 do not show any back pain, leg pain, or leg swelling. (AR at 206, 207.) A September 4, 2007 medical report shows no back or leg pain or leg swelling. (*Id*. at 207.) And the report shows that Plaintiff had no difficulty walking and that Plaintiff had stable gait and coordination and that his strength was intact. (*Id.*)

Notes from August 16, 2006, February 12, 2007, August 20, 2007, and February 13, 2008 from Dr. Levin show that Plaintiff had pain with leg raising and that there was "weakness of dorsiflexion and plantar flexion" in Plaintiff's lower extremities. (AR at 216.)

**B.     Standards**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the

8

administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### 1.     Framework for social security disability determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form

of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The sole issue that Plaintiff puts forth for judicial review is whether the ALJ properly evaluated Dr. Levin's opinion. (Dkt. 9, Pl.'s Mot. for Summ. J. at 6.) Plaintiff argues that Dr. Levin was a treating source and the ALJ failed to give due credit to Dr. Levin's opinion. (*Id.*) Plaintiff therefore maintains that the ALJ's failure to properly evaluate that opinion led to an improper RFC and hypothetical question to the vocational expert, thereby necessitating remand or a reward of benefits. (*Id.* at 14.)

Plaintiff specifically argues that the ALJ erred in not limiting Plaintiff's ability to stand/walk and concluding that Plaintiff was capable of light work.[3] (Pl's Mot. at 9.) Plaintiff supports his argument by stating that Dr. Levin opined that Plaintiff was only capable of "standing/walking for two hours in an eight-hour workday." (*Id.*, citing AR at 19, 149.) Plaintiff maintains that Dr. Levin stated that Plaintiff's limitations would disrupt a regular job schedule with low physical demands for "80 out of 160 hours per month[.]" (*Id.*, citing AR at 19, 149.)

Plaintiff notes that the ALJ discounted Dr. Levin's stand/walk opinion when Dr. Levin, six

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) and 416.967(b).

months later, found that Plaintiff was capable of work within a restricted range of lifting 10 pounds occasionally and less than 10 pounds frequently. (Pl.'s Mot. at 10.) But Plaintiff argues that the later Dr. Levin opinion that Plaintiff could work is inconsistent with the treatment history, medical signs, and findings. (*Id.*)

Defendant argues that the ALJ reasonably weighed Dr. Levin's opinion regarding Plaintiff's ability to sit, stand, and walk. (Dkt. 12, Def.'s Mot. for Summ. J. at 3.)

Plaintiff and Defendant therefore dispute whether the ALJ properly complied with the "treating source rule."

The Commissioner of Social Security has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, –F.3d–, 09-4309, 2011 WL 5456617, at *4 (6th Cir. Sept. 22, 2011) (citing 20 C.F.R. § 404.1502). Under the treating source rule, the ALJ must "give a treating source's opinion controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give controlling weight to the treating source's opinion, he "must then balance the following factors to determine what weight to give it:" "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) and 20 C.F.R. § 404.1527(d)(2)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be

11

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (citation omitted).

The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id.* at *10 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

If the ALJ fails to follow and agency rule or regulation, then the ALJ's failure "denotes a lack of substantial evidence, even where the [ALJ's conclusion] may be justified based upon the record." *Id.* at *3 (citation omitted). *See also Sisk v. Astrue*, 09-220, 2010 WL 3522307 at *10 (E.D.Tenn. Aug. 20, 2010) (holding that the ALJ's written decision met the goal of the treating source rule when the decision attacks the consistency of the treating source's opinion with other record evidence or the supportability of that opinion, for example, by pointing to an absence of clinical and diagnostic findings; and citing *Nelson v. Comm'r*, 195 F. App'x 462, 470-72 (6th Cir. 2006)). The ALJ must show "at least implicitly" why he "rejected" the treating source's opinion. *Id.*

Here, the Court recommends finding that the ALJ complied with the treating source rule and that substantial evidence supported the compliance. The ALJ noted Dr. Levin's conclusions that Plaintiff had carpal tunnel syndrome and radiculopathy. But the ALJ thoroughly explained his holding that, despite the findings and Dr. Levin's conclusion that Plaintiff could not work, Plaintiff could work and could perform light work. (AR at 18.) The ALJ noted that Plaintiff saw Dr. Levin for several years, but that Plaintiff visited Dr. Levin only sporadically. (*Id.* at 18-19.) The ALJ therefore considered both the length of treatment relationship and the frequency of examination as is required by the treating source rule. The ALJ then addressed the supportability of Dr. Levin's

12

opinion of Plaintiff's standing, sitting, and walking limitations. (*Id.*) The ALJ first noted that Plaintiff saw Dr. Levin infrequently, noting that that infrequency weighed against Plaintiff's allegations that he could not stand or walk for 6 hours in an eight-hour workday. The ALJ also addressed Plaintiff's testimony, and a PRFC that was conducted that conformed with the ALJ's RFC that Plaintiff did retain the ability to perform light work with some restrictions. The ALJ also addressed the consistency of Dr. Levin's opinion–noting that Dr. Levin found that Plaintiff could return to work only a few months after he had stated that Plaintiff could not work. (*Id*. at 19.) Given that the ALJ discussed the frequency and extent of Dr. Levin's examination and the supportability and consistency of the opinion, the Court recommends finding that the ALJ complied with the treating source rule and sufficiently explained why he did not give controlling weight to Dr. Levin's opinion.

The Court also recommends finding that the ALJ's RFC finding that Plaintiff retained the ability to walk or stand for six hours in an eight-hour workday is supported by substantial evidence. The substantial evidence–evidence a reasonable person could find supports the ALJ's decision–exists in the following facts:

- A May 9, 2005 Sierra Medical Group report shows Plaintiff is ambulatory and does not note any issues with sitting or walking (AR at 137);
- A May 23, 2005 PRFC concludes that Plaintiff could stand and/or walk for six hours in an eight hour workday; the PRFC also shows that Plaintiff could perform "all orthopedic maneuvers and transfer activities; and the PRFC also shows that Plaintiff could climb ramps and stairs and balance frequently but that he could occasionally climb ladders/ropes/scaffolds; stoop, kneel; crouch; and crawl (AR at 143); and
- Records from 2007 do not show any back pain, leg pain, or leg swelling, and show that Plaintiff had no difficulty walking and that he had a stable gait and that coordination and strength were intact (AR at 206-07).

The Court recommends finding this evidence to be substantial evidence upon which to find that the ALJ's decision was not in error. While evidence exists that Plaintiff had radiculopathy and pain in

straight leg raising, Plaintiff's infrequent treatment from Dr. Levin and the evidence above suggests that substantial evidence supports the ALJ's finding.

### D. Conclusion

Because the Court recommends finding that the ALJ properly addressed Dr. Levin's opinion and substantial evidence existed to support the ALJ's conclusions regarding that opinion, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing the case.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  July 23, 2012                           s/ Mona K. Majzoub
                                                              MONA K. MAJZOUB
                                                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 23, 2012                             s/ Lisa C. Bartlett
                                                              Case Manager